## Mazzucca v. Methodist Hospital

*Linda Roser*, for plaintiff.

*Slade H. McLaughlin*, for defendant Paul Lewis, M.D.

*Susan Wallack*, for defendant Carl Della-Badia.

*Allan Starr*, for defendant Richard Bove, M.D.

*Timothy I. McCann* and *Regina A. Vogel*, for defendant Methodist Hospital and Dr. Wesley Baer.

FORER, *J.*, November 26, 1986—This medical malpractice action was instituted by plaintiff, Deborah Mazzucca, against defendants Methodist Hospital, Carl Della-Badia, D.O., Richard Bove, M.D., and Paul L. Lewis, M.D. Plaintiff has alleged that defendant surgeons acted negligently in performing a total hysterectomy and colostomy upon her and have thus deprived her of the opportunity to have children in future years. Plaintiff, an unmarried woman, was 25 years of age at the time of the procedure.

Dr. Della-Badia, a surgeon specializing in the field of obstetrics and gynecology, had scheduled

plaintiff to undergo an exploratory procedure in response to her complaints of irregular menses and a right adnexal mass. In the course of the procedure, Dr. Della-Badia discovered a tumor which he dissected and sent to the pathology department for analysis. On the basis of his observations and the content of the intercom transmission from pathology, he elected to perform the hysterectomy, Dr. Bove, who was called for consultation, performed the colostomy.

Dr. Lewis, the pathologist, maintains that the content of the intercom transmission was to the effect that no further action should be taken until a permanent section could be studied. The surgeons, however, maintain that the oral report received from pathology indicated that the mass was a malignancy and, therefore, on that basis, they elected to proceed with the additional surgery.

The memorandum, for which Dr. Bove seeks to obtain a protective order, is a written report in which he recorded conversations with defendant-physicians, as well as his opinion and conclusions regarding relevant slides and the quality of care rendered. Dr. Bove, chairman of the department of obstetrics and gynecology at defendant-hospital, is not a party to the underlying medical malpractice action.

This action comes before the court as a motion by nonparty witness, Dr. Bove, for protective order and to quash subpoena. On July 7, 1986, said motion was granted without prejudice to rights of defendant, Dr. Lewis, to make further application to this court for discovery. Motion was granted in a conference scheduled by counsel for co-defendant, Methodist Hospital, for the purpose of requesting a stay of discovery proceedings pending resolution of Dr. Bove's motion for protective order. As defendant,

Dr. Lewis, had no objection to such stay of discovery proceedings, he elected not to attend the conference and the above order, therefore, was entered in his absence. The discovery being sought is with respect to a file memorandum prepared by Dr. Bove regarding the incident giving rise to this litigation.

The central issue in this case is the content of an intercom transmission from pathology to the surgical suite as to the malignant or nonmalignant nature of a tumor which was found during exploratory surgery of plaintiff.

On June 18, 1986, counsel for defendant, Dr. Lewis, served a subpoena on Dr. Bove regarding a file memorandum about which Dr. Bove had testified during his deposition. The memorandum was prepared by Dr. Bove subsequent to conversations that he had with Dr. Della-Badia, a surgeon and member of his department, and Dr. Lewis, a pathologist, both defendants in this case. Oral argument on the motion was held September 17, 1986.

Dr. Bove contends that the file memorandum is not discoverable. In support of this position he asserts the following arguments:

(1) Defendant, Dr. Lewis, is not entitled to discover the confidential file memorandum as it is protected under the terms of the Pennsylvania Peer Review Protection Act.

(2) A nonparty witness with expert qualifications cannot be compelled to give expert opinions.

Peer review in hospitals, academia, and other contexts is essential to assure that unqualified persons are not granted institutional status. If peers who give their opinions will be subject to questioning with respect to their opinions, obviously there will not be frank and forthright discussions. Collegiality will be impaired and the public will be denied the protection afforded by a candid assess-

ment of the capabilities of professionals. In medicine, granting hospital status to doctors whose qualifications may be questionable, public safety is directly at stake. In its adoption of the Peer Review Protection Act, 63 P.S. §425 et seq. (Purdon's, 1986) this commonwealth has attempted to encourage peer evaluation through grants of confidentiality and immunity from legal liability to such committees. In so providing, the state hoped to "(1) improve the quality of the care rendered; (2) reduce morbidity and mortality; and (3) keep within reasonable bounds the cost of health care." *Robinson v. Magovern*, 83 F.R.D. 79, 87 (E.D. Pa., 1979). Despite the act's broadly stated purpose, however, the protection afforded is actually narrow in its scope.

Specifically, the act provides:

"The proceedings and records of a review committee shall be held in confidence and shall not be subject to discovery or introduction into evidence in any civil action against a professional health care provider arising out of the matters which are the subject of evaluation and review by such committee . . . ." 63 P.S. §425.4 (Purdon's, 1986)

In order to claim protection under this confidentiality provision, therefore, the "proceedings and records" must have originated with the "review committee" and arise out of the matter which is subject to review.[1]

In *Baldwin v. McGrath (No. 2)*, 8 D.&C.3d 341 (1978), defendant claimed that a provision in the hospital bylaws which authorized chairman or senior members of the department to intervene during the performance of any questionable medical procedure, subject to appeal to the executive committee

---

[1] See note *Medical Peer Review Protection in the Health Care Industry,* 52 Temple L. Q. 552, 577-578 (1979).

by the physician so corrected, constituted "peer review" and, therefore, actions taken pursuant to such committee were protected under the act. The court denied defendant's protective order stating that although acting under the authority of the bylaws, the act provides no protection where such actions were not taken pursuant to a "peer review" as defined in the act.

In explaining its decision, the court stated that "while the act is silent concerning the procedure for establishing a review organization, obviously some definitive action would have to be taken before such an organization, vested with the authority to sanction individuals licensed to practice in the health care fields, could legally function." *Baldwin,* 8 D.&C.3d at 344. Accordingly, protection is authorized only when there has been some "definitive action" taken prior to the time of review.

In *Holliday v. Klimoski,* 75 D.&C.2d 408 (1976), a medical malpractice case in which plaintiff alleged negligence on the part of hospital in allowing an unqualified physician to perform surgery, a similar conclusion was reached. Plaintiff had requested the production of "all internal hospital records dealing with the review of their (sic) case by the medical staff and various committees of the hospital." *Holliday,* 75 D.&C.2d at 409. The hospital claimed that such records were not discoverable as disclosure of same would be injurious to the concept of peer review. The court disagreed.

Construing the act as not encompassing such broad protection, the court compelled the production of the following documents: application of defendant-physician for appointment to the staff of the hospital; all written recommendations by the profes-

sional staff regarding defendant-physician's application; all records, memoranda, or minutes of the board of trustees relating to their consideration of the application and recommendations regarding defendant-physician for a period of five years prior; all written charges relating to defendant-physician's professional conduct filed with the medical staff of the hospital by the board of trustees for a period of five years prior; and minutes of the surgical or medical staff meetings which refer to the professional conduct of defendant-physician for a period of five years prior.

The Pennsylvania courts in both *Baldwin* and *Holliday,* have narrowly construed the protection afforded under the Peer Review Protection Act. Such protection is extended only when the requested discovery relates to the records or proceedings of a review committee established by "some definitive action" prior to the time of review. The record must be the product of such committee and relate to the matter which is subject to review.

In the case at bar, Dr. Bove admits that the document at issue was prepared on his own initiative as opposed to being prepared pursuant to hospital bylaws.[2] It was "a memo from me to me" he stated. Furthermore, he acknowledges that he has never attended any meetings where the subject of this case has been discussed.

Both *Baldwin* and the case at bar involve discovery requests brought by doctors against doctors. In both cases the hospital bylaws provided for review by chairman and/or senior members of departments as to the professional performance of practitioners

---

[2] Obviously Dr. Bove was a single individual acting on his own initiative. He is not a "review committee" which is the only entity entitled to the protections of the act.

within their respective departments.[3]

In both cases, however, it is clear that the "review" at issue fails to qualify for protection under the act.

In *Holliday,* a medical malpractice action similar to the case at bar, broad discovery was permitted. In construing the act narrowly, the court found that although the professional staff, board of trustees, and both surgical and medical staffs each engaged in some limited form of "peer review," that none of these entities constituted a protected organization as defined under the statute.

Although Dr. Bove cites *Bandes v. Klimowski,* 3 D.&C.3d 11 (1977), in support of his position that such memoranda are protected, the privilege extended in *Bandes* was addressed to a broad question posed to a hospital administrator regarding the records of any disciplinary actions taken against the defendant-physician generally. "Has there ever been any infraction of the rules concerning Dr. Klimowski other than late reporting of hospital records?" *Bandes,* 3 D.&C.3d at 16. The court found, therefore, that such review of professional qualifications was within the limited scope of protection afforded under the act. Unlike the case at bar, where Dr. Bove prepared the memorandum in respect to the specific incident giving rise to the litigation, the information sought in *Bandes* had no direct relation to the facts of the underlying litigation.

Dr. Bove's second objection to production of the requested file memorandum is that as a nonparty, expert witness, he cannot be compelled to provide expert testimony against his will. In support of this

---

[3] See *Baldwin,* 8 D.&C.3d at 345 (citing article 6, section 3, of the bylaws of Memorial Osteopathic Hospital); and Article VI, §C, subsection 3 of the bylaws of Methodist Hospital.

position, Dr. Bove, quoting from *Williams v. South Hills Health System,* 24 D.&C.3d 206, 208 (1981), which states that "(a) review of the appellate case law reveals that Pennsylvania does adhere to the position that an expert generally cannot be compelled to give expert testimony in a civil case." The actual ruling in *Williams,* however, is much more limited. In *Williams,* a physician who was not an employee of the hospital at the time of the alleged malpractice, and had no personal knowledge as to the facts of the particular case, was permitted by the court to refuse to testify as to his opinion relating to the subject of the litigation. In so holding, the court stated: "[W]e rule only that an expert witness who has no knowledge of any relevant facts will not be compelled to give expert testimony when the parties seeking this testimony have made no showing that comparable expert testimony cannot be obtained by other means." *Williams,* 24 D.&C.3d at 211.

In the case at bar, Dr. Bove has been requested to produce a file memorandum which reflects his direct knowledge of the subject of this litigation. Not only did Dr. Bove personally review the relevant pathology slides, but he also had discussions regarding the incident with the surgeon and pathologist involved and the chairman of both the department of surgery and department of anesthesiology. Unlike the circumstances in *Williams,* defendant, Dr. Lewis, does not wish to compel Dr. Bove to testify orally to a present opinion of past events, but simply to produce the contemporaneously recorded memorandum already in existence. Clearly, this situation differs substantially from the circumstances of *Williams.*

The policy of the Pennsylvania courts is to permit broad discovery. The burden of demonstrating a privilege or exemption is, therefore, upon the party

seeking to limit such disclosure.

"Great advances have been made in modern times to prevent a trial from being just a game of hide-and-seek. Rules have been promulgated to make each side reveal relevant evidence to the other. All of these rules are designed to make a trial a procedure for ascertaining the true facts. It is only after these facts have been ascertained that true justice can be dispensed." *Tataren v. Little,* 2 D.&C.3d 651, 655 (1977), *quoting Elkman v. Elkman,* 196 Pa. Super. 133, 136, 173 A.2d 682, 682 (1961).

Dr. Bove has failed to establish that the file memorandum at issue is privileged or otherwise exempt from discovery. As Dr. Bove is not being compelled to testify as an expert at trial, the production of such memorandum will cause no undue hardship to him in the practice of his professional duties. Motion for protective order is, therefore, denied